UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-177 (SRN)

UNITED STATES OF AMERICA,

        Plaintiff,           **PLEA AGREEMENT AND SENTENCING STIPULATIONS**

v.

CHAD DWAYNE FORGA,

        Defendant.

The United States of America and defendant CHAD DWAYNE FORGA (hereinafter referred to as FORGA or "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

    1.    **Charges and Waiver of Indictment**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. The defendant agrees to waive indictment. The defendant fully understands the nature and elements of the crime with which he has been charged. The defendant is pleading guilty because he is in fact guilty of Count One of the Information.

    2.    **Factual Basis**. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

    On or about from November 21, 2020 to March 2022, the defendant conspired and agreed with Matthew Thomas Onofrio



("Onofrio") and others to execute a scheme and artifice to defraud federally-insured financial institutions in Minnesota and Wisconsin (collectively, "the lenders"). The purpose of the conspiracy was to obtain loans for the purchase of commercial property using false and fraudulent pretenses, misrepresentations, and omissions of material fact.

The loans were obtained for an investment program marketed by a company Onofrio created called Northwoods Management LLC, sometimes operating under the name Wild Moose Ventures. As part of the program, Onofrio and FORGA agreed that FORGA, through entities he created, would purchase six commercial properties from Onofrio using funds borrowed from the lenders to finance the purchases. To obtain the loans, Onofrio and FORGA provided false and misleading information to lenders and concealed material information from lenders.

The misrepresentation and concealment occurred in two ways. First, at Onofrio's direction, FORGA falsely claimed in personal financial statements provided to lenders that he had sufficient cash on hand to fund a down payment on the properties, even though in some cases he did not actually have the funds. In at least one case, Onofrio wired funds into an account controlled by FORGA to generate purported proof of FORGA's wealth. In fact, these were Onofrio's funds, and FORGA and Onofrio agreed that FORGA would wire the funds back as soon as the lender received verification that the funds were in FORGA's account. This transaction was meant to mislead the lender as to FORGA's creditworthiness.

Onofrio also lent FORGA funds for down payments on the property purchases, but neither FORGA nor Onofrio disclosed these debts, including the interest that would be paid, to the lenders. This hidden loan was called the "seller carry" and facilitated the fraud by allowing FORGA to borrow funds for the down payment and obtain the loan on terms more favorable than a loan without the substantial down payment. FORGA paid Onofrio significant interest on the "seller carry" loans.

Each of these misrepresentations and concealed facts was material information to the lenders. In all, FORGA and Onofrio caused five lenders to issue a total of six loans under false pretenses. The total amount borrowed by FORGA was $26,187,208. FORGA thereafter paid a total of $25,042,433 back to the issuing lenders in the form of mortgage payments and subsequent sales of properties. With credit for proceeds from subsequent sales of properties and repayment of principal through March 2022, the Sentencing Guidelines loss is $2,752,405.02.

The conspiracy ended in March 2022 when FORGA informed Onofrio that he would not participate in another fraudulent deal.

Beginning no later than November 21, 2020 and continuing until on or about March 2022, in the State and District of Minnesota and elsewhere, the defendant,

CHAD DWAYNE FORGA,

did knowingly and willfully conspire with others known and unknown to commit an offense against the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 371. In the course of and in furtherance of the conspiracy, conspirators committed a number of overt acts, including but not limited to: on or about June 3, 2021, Matthew Thomas Onofrio caused the issuance of a wire transfer in the amount of $3,250,000 to an account FORGA controlled, in connection with an application for a loan to purchase property in Saint Cloud, Minnesota.

3.     **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.     **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has

the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties**. The defendant understands that Count One of the Information charging Conspiracy in violation of Title 18, United States Code, Section 371, is a felony offense that carries the following statutory penalties:

   a. a maximum of five years in prison;

   b. a maximum supervised release term of three years;

   c. a maximum fine of $250,000, or twice the gross gain from or loss caused by the offense, whichever is greatest;

   d. restitution to any victims of the offense;

   e. assessment of the costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920;

   f. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A); and

   g. the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1).

7.   **Guidelines Calculations.**   The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

   a.   Base Offense Level. The parties agree that the base offense level is 6. U.S.S.G. § 2B1.1(a)(2).

   b.   Specific Offense Characteristics – Loss. The parties understand that the loss shall be determined pursuant to U.S.S.G. §§ 2B1.1 and commentary. The parties agree that the loss for purposes of the Sentencing Guidelines is $2,752,405.02, subject to potential adjustment under application note 3(D) to Section 2B1.1. Pursuant to U.S.S.G. §§ 2B1.1(b)(1)(I), if the loss at the time of sentencing is $2,752,405.02, 16 levels are added.

   c.   Other Specific Offense Characteristics and Adjustments. The parties agree that the defendant derived more than $1,000,000 from one or more financial institutions as a result of the offense, which adds 2 levels. U.S.S.G. §§ 2B1.1(b)(17)(A).

   d.   Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report.

e.     The parties believe the defendant qualifies for a further two-level reduction in offense level pursuant to U.S.S.G. § 4C1.1. This reduction will apply if the Court finds that the defendant meets all of the following criteria: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

f.     Except as otherwise provided above, the parties agree that no other specific offense characteristics or adjustments apply, other than a downward adjustment for acceptance of responsibility.

g.     <u>Total Offense Level</u>. Based on the foregoing, the total adjusted offense level is **19**.

h.     <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    i.    <u>Guidelines Range</u>. If the total adjusted offense level is 19, and the criminal history category is I, the Sentencing Guidelines range is **30-37 months of imprisonment**.

    j.    <u>Fine Range</u>. If the total adjusted offense level is 19, the Sentencing Guidelines fine range is $10,000 to $100,000. U.S.S.G. § 5E1.2.

    k.    <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least one year up to a maximum supervised release term of three years. U.S.S.G. § 5D1.2.

8.    **Revocation of Supervised Release.** The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9.    **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the

parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. Except as otherwise provided in this plea agreement, the parties are free to recommend whatever sentence they deem appropriate. If the defendant complies with all the provisions of this plea agreement, the government agrees that it will not seek a sentence higher than the applicable advisory Guidelines range as determined by the Court. The parties reserve the right to move for a downward departure or variance from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a) and to oppose any such motion made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime(s), including specifically any bank that did not recover all principal owed. The defendant understands that the order for restitution may differ from the loss for purposes of the Sentencing Guidelines under U.S.S.G. §§ 2B1.1 and commentary. The parties agree that restitution will be $2,752,405.02, less any repayments made after March 2022

that may be credited against principal. The parties agree that any restitution should be payable jointly and severally with any order for restitution in *United States v. Onofrio*, Crim. No. 22-322 (SRN), insofar as that order relates to the loans made to FORGA. The parties agree that any restitution obligation shall be reduced by any repayments of loan principal the defendant makes through the time of sentencing to lenders that financed the purchase and any payments to lenders resulting from the sale of the collateral for the loans made to the defendant. "Lender" and "lenders" as used anywhere in this plea agreement does not include Onofrio or any of his entities. The defendant agrees that restitution shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any

releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from the proceeds traceable to the conspiracy charged in Count 1 of the Information. The defendant consents to the entry of a money judgment in the amount of $26,187,208, less any amounts described below, and agrees that the amount of proceeds he obtained as a result of the conspiracy equals or exceeds this amount. The parties agree that the defendant's proceeds shall not include any of the following: amounts from the sale of the property repaid to a lender that financed the sale of the property other than Onofrio, reasonable and necessary payments for closing costs, routine professional services associated with the sale of real estate, and if the debt to the lender is fully repaid, any amounts up to the amount of any down payment for the property. The defendant further agrees that any proceeds from the sale of any collateral that remain after full repayment of loans made for the purchase of the property, reasonable and necessary payments for closing costs, routine professional services associated with the sale of real estate, and return of any downpayment, shall be forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c). The United States reserves the right to seek forfeiture of additional specific assets and

the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

15. **Restoration of Forfeited Funds**. The parties agree that, because the Court is required to order the defendant to make restitution and the defendant has agreed to forfeit proceeds of the conspiracy charged in Count 1 of the Information, as set forth in this agreement, the restoration procedures set forth in Chapter 14, Section II(B) of the 2023 Asset Forfeiture Policy Manual may apply. The United States agrees that, if appropriate under applicable regulations, it will seek the approval of the United States Department of Justice, Money Laundering and Asset Recovery Section ("MLARS" or "the Section") to have proceeds of forfeited assets applied to restitution pursuant to MLARS's restoration procedure. The United States further agrees to request that MLARS undertake a preliminary review of the expected restitution and forfeiture in advance of sentencing, provided that the defendant completes a financial disclosure statement within 14 days of the date of the defendant's change of plea hearing. The United States agrees to advise the defendant of MLARS's response to its request for a preliminary review. The United States agree to make the request to MLARS for a preliminary review within 30 days after the defendant's change of plea hearing and the United States' receipt of the defendant's completed financial disclosure form. The United States agrees that, if appropriate and consistent with applicable regulations, it will make the representations set forth in Chapter 14, Section II(B)(2) of the Asset Forfeiture Policy Manual in support of its request to MLARS for restoration.

16. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

17. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this

plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

JOSEPH H. THOMPSON
Acting United States Attorney

Date: 7-23-25

BY: Robert M. Lewis
Matthew Murphy
Craig R. Baune
Assistant U.S. Attorneys

Date: 7-23-25

Chad Dwayne Forga
Defendant

Date: July 23, 2025

Stephen Miller, Esq.
Andrew Linz, Esq.
Miguel Pozo, Esq. (MN# 0400728)
Counsel for Defendant

13